**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **BRANDON POWELL,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:26-cv-26-5102 |
| | § | |
| **NATIONAL SKEET SHOOTING ASSOCIATION d/b/a NATIONAL SPORTING CLAYS ASSOCIATION,** | § | |
| | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |

## VERIFIED COMPLAINT

Plaintiff Brandon Powell files this Verified Complaint against Defendant National Skeet Shooting Association, a Texas non-profit corporation doing business as the National Sporting Clays Association, and alleges as follows: This Complaint is verified by the Unsworn Declaration of Brandon Powell filed contemporaneously and attached as Exhibit A pursuant to 28 U.S.C. § 1746.

## I. NATURE OF THE ACTION

1. Plaintiff Brandon Powell ("Powell") earns his living competing in, and coaching students for, sporting clays tournaments. He is among the most accomplished competitors the sport has produced. On August 6, 2026, the Executive Council of Defendant National Skeet Shooting Association, doing business through its corporate division the National Sporting Clays Association ("NSCA" or "Defendant"), suspended his membership for the remainder of 2026 and for an additional ten (10) calendar years, barred him permanently from eligibility for any NSCA recognition team, barred him permanently from eligibility for the NSCA Hall of Fame, and placed

him on lifetime disciplinary probation. The stated basis was a mutual, verbal dispute among members of a single squad over three days of a regional tournament.

2. An individual cannot enter an NSCA-sanctioned competition unless he is a member of NSCA in good standing, and NSCA sanctions substantially all registered sporting clays competition in the United States. The August 6, 2026 ruling therefore does not merely discipline Powell. It ends his profession both as a competitor and as a sponsored athlete for the remainder of his competitive life, and strips him permanently of honors that cannot be recreated after the fact.

3. NSCA's Rules and Regulations constitute a contract between NSCA and its members. NSCA did not administer that contract as written. It ratified a shoot-level disqualification imposed without the notice and opportunity to be heard that its own rule requires. It acted on an unsigned protest that its rules require to be signed. It relied on thirteen witness statements and on information from the host club, most of which were never disclosed to Powell, never summarized for him, and never permitted him to answer. It reached back to conduct "over the last several years" that no timely complaint placed before it. It obtained no statements from the witnesses Powell identified, including a disinterested spectator. And it imposed a career-ending sanction on Powell while imposing probation only on another squad member who, by the complainant's own account, used vulgar language toward Powell first and threw spent shells at him first.

4. This is not a quarrel with the technical application of a procedural rule. Powell was subjected to an adjudication in which he never learned the evidence against him, never confronted a witness, never appeared before the body that decided his case, and received no reasoned decision — and the sanction that followed is grossly disproportionate to the conduct properly before the Executive Council and to the discipline NSCA imposes for comparable or worse conduct by others. Texas law does not insulate association action of that character from review.

5. Powell seeks (a) damages for breach of contract; (b) a declaration under 28 U.S.C. §§ 2201–2202 that the August 6, 2026 ruling is void and unenforceable because it was arbitrary, capricious, and fundamentally unfair, and because it was taken in disregard of the Rules that govern NSCA's exercise of its disciplinary power; (c) preliminary and permanent injunctive relief restoring his membership in good standing; and (d) his attorney's fees and costs.

## II. PARTIES

6. Plaintiff Brandon Powell is an individual and a citizen of the State of Georgia, residing in Warner Robins, Houston County, Georgia. At all times material to this Complaint before August 6, 2026, Powell was an NSCA member in good standing (NSCA Member No. 537260). He has earned two World Championship titles, two National Championship titles, two U.S. Open Championship titles, membership on fourteen United States teams, and scores of titles at individual competitions.

7. Defendant National Skeet Shooting Association is a Texas non-profit membership corporation, chartered on or about March 26, 1984, with its principal place of business at 5931 Roft Road, San Antonio, Texas 78253, in Bexar County. See Exhibit 1, attached hereto. The National Sporting Clays Association is a division of the National Skeet Shooting Association, through which the corporation governs and sanctions the sport of sporting clays in the United States. Exhibit 1, Article 10, p. 18; Article 2, p. 2. Defendant may be served with process through its registered agent, Michael W. Hampton, Jr., 5931 Roft Road, San Antonio, Texas 78253.

## III. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Powell is a citizen of the State of Georgia as verified in Plaintiff's Rule 7.1 disclosure. Defendant is a Texas

corporation with its principal place of business in Texas and is therefore a citizen of Texas. Complete diversity exists.

9. The matter in controversy exceeds $75,000, exclusive of interest and costs. The suspension bars Powell from the competition, coaching, sponsorship, and instruction income on which his livelihood depends for more than ten years, and it permanently extinguishes his eligibility for NSCA recognition teams and for the NSCA Hall of Fame. The object of this litigation — restoration of Powell's ability to earn his living in his profession — far exceeds the jurisdictional threshold. As but one element, for example, the jurisdictional amount is substantially less than Plaintiff's projected future earnings from competition prize money.

10. This Court has personal jurisdiction over Defendant because Defendant is incorporated in Texas, maintains its principal place of business in Texas, and conducts substantial, continuous, and systematic business in Texas. Defendant is at home in this State.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Powell's claims occurred in this District, including the Executive Council's deliberation, its vote, and the issuance of the challenged ruling from Defendant's San Antonio headquarters.

12. Assignment to the San Antonio Division is proper because Defendant's principal place of business is in Bexar County, Texas, which is within the San Antonio Division. 28 U.S.C. § 124(d)(4).

13. Pursuant to W.D. Tex. Local Rule CV-65, Powell's application for a temporary restraining order and preliminary injunction is filed contemporaneously with this Complaint as a separate instrument.

## IV. FACTUAL ALLEGATIONS

**A. The membership contract and the Rules that govern discipline.**

14. NSCA is the body that sanctions competitive sporting clays in the United States. A sporting clays event at which scores are officially registered, applied to the national classification and ranking system, and used to determine eligibility for state, regional, and national championships and for national teams is an event sanctioned by NSCA. A shooter cannot enter such an event unless he is an NSCA member in good standing. See Exhibit 3, Rule VI-A-2-a., p. 27, attached hereto.

15. NSCA membership is not a matter of individual negotiation. NSCA drafts the terms, and an athlete who wishes to compete accepts them as written. See Exhibit 2, Rule II-3, pp. 8-12, attached hereto; Exhibit 3, Rule IV-A & B, p. 8.

16. The NSCA Rules and Regulations, together with the NSCA Governance Book and the Bylaws of the National Skeet Shooting Association, constitute a contract between NSCA and each of its members. By paying dues and entering sanctioned competition, each member agrees to abide by those Rules, and NSCA in turn agrees to administer and enforce them as written.

17. The Rules set out a specific, mandatory procedure that NSCA must follow before it suspends, expels, or otherwise disciplines a member. Among other requirements, the Rules provide, in pertinent part:

> (a) A written complaint must be submitted to the NSCA Director or Executive Director "within thirty (30) days of the alleged violation," and "[t]he action of being disqualified from a shoot does not start disciplinary action" (Rule IV-D-2(g));

(b) The complaint must identify the alleged violator, the date and location of the violation, a reasonably detailed description of the alleged violation, the names and addresses of all witnesses, and the complainant's signature (Rule IV-D-2(g)(i)–(v));

(c) The Director or Executive Director "shall thoroughly investigate the allegations . . . by attempting to obtain written statements from all known witnesses" (Rule IV-D-2(k));

(d) The Director or Executive Director must prepare a recommendation to the Executive Council that includes all evidence considered, a determination of whether the alleged violation occurred, and the recommended discipline (Rule IV-D-2(l)); and the Council's ruling must likewise state the evidence considered and a determination of whether the alleged violation occurred (Rule IV-D-2(n)); and

(e) Before any shoot-level disqualification or expulsion, "Shoot management may disqualify or expel a member . . . after giving both parties (the party filing the complaint and the party complained of) an opportunity to be heard prior to disqualification or expulsion," and "a written record of the complaint, the response and the decision shall be forwarded to the NSCA Director" (Rule IV-F).

18. The Rules confer unfettered and unguided discretion on the Executive Council as to the sanction. Rule IV-D-2(n) empowers the Council to "suspend or expel a member or to impose any other disciplinary action it deems appropriate." Rule II-3-f. of the Governance Book provides that "[a]n NSCA member may be suspended at any time in the discretion of the Executive Director, provided, however, that any suspended member will have a right to an appeal . . . ." Exhibit 2, p. 11.

19. The Rules do not grade offenses, do not establish presumptive or maximum sanctions, and do not require that a sanction bear any stated relationship to the conduct found.

**B. Powell's profession and the pecuniary value of NSCA membership.**

20. Powell is a professional sporting clays competitor and instructor. Competitive sporting clays is a commercial enterprise. Registered tournaments charge entry and target fees and award purses, options money, and prizes. Elite competitors derive income from tournament winnings and options; from sponsorship, endorsement, and product-supply contracts with firearm, ammunition, optic, and apparel manufacturers; from paid instruction, clinics, and coaching; from appearance and demonstration fees; and from related media opportunities.

21. Each of those income streams depends on membership in good standing and on competing successfully in NSCA-sanctioned events. Sponsors and manufacturers extend contracts by reference to NSCA classification, NSCA titles, and NSCA All-American standing. Students engage Powell for instruction because of his current competitive record. A competitor who cannot enter registered competition has no competitive record, no classification, and no standing to sell.

22. In the year preceding the August 6, 2026 ruling, Powell earned several hundred thousand dollars from tournament winnings, sponsorship and endorsement agreements and product benefits, instruction, clinics, and coaching fees, and from appearance and demonstration fees.

23. There is no alternative competition series for Powell to enter. Because NSCA sanctions substantially all elite registered sporting clays competition in the United States, and because membership in good standing is a prerequisite to entry, there is no other tour, circuit, or sanctioning body through which Powell can compete during the suspension. Unsanctioned club events and other shotgun disciplines produce no registered scores, no classification, no ranking,

and no championship or team eligibility, and are not recognized by sponsors as meaning competitive results.

24. Membership therefore carries substantial pecuniary value, and its withdrawal works a correspondingly substantial pecuniary loss. Powell is 39 years old. A suspension running to January 1, 2037, consumes a substantial portion of the remainder of his competitive career, and even if he were to regain eligibility in 2037, his professional standing has effectively been ruined by the suspension. The permanent bars on recognition-team and Hall of Fame eligibility extinguish honors that, once forgone, cannot be earned later.

**C. The 2026 North Central Regional Championship.**

25. From July 10 to July 12, 2026, NSCA sanctioned the North Central Regional Championship, hosted at Northbrook Sports Club ("Northbrook") in Hainesville, Lake County, Illinois. Powell competed in the Main Event. He was squadded with Todd Hitch, Jonathan Prince, Jared Rumer, and Cameron Hicks.

26. Over the three days, several members of the squad engaged in a mutual and escalating verbal dispute. The conduct ran in more than one direction. By the account of the complaining member himself, at one station Jonathan Prince used vulgar language toward Powell and threw his spent shells ("hulls") at Powell first; the same complaint describes profanity exchanged between multiple squad members and requests no action against Prince. A separate, unsigned protest submitted to Northbrook — which Powell believes, based on the description of the author's participation, was written by Cameron Hicks — accused Powell of the very hull-throwing conduct that others directed at Powell, on the same day and course.

27. On the first day of competition, Powell reported the developing conflict to shoot management and asked a shoot official, Brett Seibert, to accompany the squad the following day

— consistent with the Rules' direction that members report violations they witness (NSCA Rules IV-C-8, II-A-1). At more than one station, other squad members entered the three-foot safety zone behind Powell while he was actively shooting and spoke to or near him in the stand, contrary to NSCA Rule II-A-16 and, at a Regional Championship, NSCA Rule VII-E-5. Powell repeatedly asked them to move back.

28. At the conclusion of the Main Event, Powell won a shoot-off for High Over All and was declared the champion of the North Central Regional.

**D. The shoot-level disqualification, imposed without notice or hearing.**

29. Hours after Powell was declared champion, Northbrook disqualified both Powell and (on information and belief) Cameron Hicks. Powell was not presented with any written complaint in advance of the disqualification and was given no opportunity to be heard before it was imposed, even though Rule IV-F permits shoot management to disqualify a member only "after giving both parties . . . an opportunity to be heard prior to disqualification or expulsion." On information and belief, no written record of the complaint, the response, and the decision was forwarded to the NSCA Director, as the same rule requires; at the very least, Powell was not given any copy of the transmission.

**E. The formal complaint and Powell's response.**

30. On or about July 12, 2026, Todd Hitch submitted a written complaint to NSCA concerning the events of the North Central Regional. See Exhibit 4, attached hereto. The complaint was docketed as NSCA Formal Complaint #26-10. On July 23, 2026, Executive Director Michael Hampton, Jr. transmitted the complaint to Powell and advised that it would go to the NSCA Executive Council for review.

31. The Hitch complaint recited five incidents. See Exhibit 4. Although Rule IV-D-2(g) requires that a written complaint be submitted "within thirty (30) days of the alleged violation," the complaint's conclusion asked the Executive Council to consider Powell's alleged conduct "over the last several years" and "what I believe to be a documented history" — allegations offered on belief rather than personal knowledge, and attempting to reach conduct that either had already been adjudicated or that was outside the time reach of the Hitch complaint.

32. NSCA also treated an unsigned protest lodged at the Northbrook event as an additional complaint against Powell. See Exhibit 5, attached hereto. Rule IV-D-2(g)(v) requires that a complaint bear the complainant's signature. The protest bore none, and NSCA acted on it anyway.

33. Powell timely submitted a signed written statement under Rule IV-D-2(j). See Exhibit 6, attached hereto. Powell included a short video clip with his response, which is not appended hereto due to its electronic size but is described in his letter.

34. As Powell noted in his written response, none of the five described incidents concerned conduct directed at the complainant himself; they concerned Jared Rumer, Jonathan Prince, and Cameron Hicks. Powell acknowledged that the weekend involved mutual conflict and that his own conduct had not been perfect. He denied the allegation involving Jared Rumer. He explained that the hull-throwing and vulgar language at the disputed station were initiated by another squad member and were understood by both as non-hostile. He identified the safety-zone and communication-rule violations committed against him. He noted that he had reported the conflict to shoot management before it escalated. He identified numerous witnesses — including a disinterested spectator, Brett Turrentine — and asked expressly that signed statements be obtained from all of them, as Rule IV-D-2(k) requires. He asked, in the alternative, that any

discipline be proportionate to a mutual, three-day verbal dispute already addressed by disqualification.

**F. The Executive Council's August 6, 2026 ruling.**

35. On August 5, 2026, as recited in its letter, the Executive Council met. As set out in its letter communicating the decision to Powell, the Executive Council:

> reviewed the [Hitch] complaint, your response, information from the Northbrook Sports Club, and the witness statements of Cameron Hicks, Jonathan Prince, James Brody, Enzo Di Giovanni, Brett Turrentine, Tiffany Goodin, Brett Seibert, Jared Rumer, Michael Luongo, Jr., Scott Hitch, Julianne Hitch, Gary Fitzjarrell, and Sammy McFaddin.

See Exhibit 7, attached hereto.

36. Powell never saw that evidence. Before its deliberations, the Executive Council did not give Powell copies of the information from Northbrook Sports Club (if the "information" was even in writing) or the witness statements of Cameron Hicks (unless Exhibit 5 proves to have been written by him), Jonathan Prince, James Brody, Enzo Di Giovanni, Brett Seibert, Jared Rumer, Michael Luongo, Jr., Scott Hitch, Julianne Hitch, Gary Fitzjarrell, or Sammy McFaddin. Powell was never told what those witnesses said, was never given an opportunity to respond to any of it, and was never permitted to question any of them. He did not appear before the Executive Council. No hearing of any kind was held. No record or transcript exists, so far as Powell is aware. In addition, most of the witnesses have vested interests in having Powell suspended inasmuch as they are competitors (or related to competitors) who will benefit from his absence.

37. The August 6, 2026 letter recited that:

> Your actions on July 10, 2026, July 11, 2026, and July 12, 2026 were violations of the NSCA's rules and conduct, which provide in pertinent part that "[i]t shall be a violation of these rules to . . . (1) Exhibit unsportsmanlike conduct of any kind, including but not limited to . . . cheating, swearing,

> verbal or physical abuse of any shooter, scorer, field judge, shoot official or protest committee . . . (7) Exhibit any conduct that is harmful to the NSCA, its membership, or the sport as a whole." See NSCA rules IV-C-1, IV-C-7.[1]

Exhibit 7.

38. The ruling did not identify which of the five alleged incidents the Council found to have occurred, which it rejected, what evidence it credited or discredited, how it resolved the conflict between the complainant's account and Powell's, or why the sanction it selected followed from the facts it found. Rule IV-D-2(n) requires that the Council's ruling state the evidence considered and a determination of whether the alleged violation occurred.

39. The August 6 letter imposed the following discipline:

(a) the Northbrook disqualification was allowed to stand;

(b) Powell's NSCA membership was suspended for the remainder of 2026 and for a period of ten (10) additional calendar years, effective August 6, 2026;

(c) he could not re-apply for membership until after January 1, 2037, and NSCA would not be obligated to accept any application;

(d) if reinstated, he would be subject to lifetime disciplinary probation;

(e) he was permanently disqualified from eligibility for any NSCA recognition team, including the USA Sporting Clays Team and the NSCA FITASC Team; and

(f) he was permanently disqualified from eligibility for nomination to or induction into the NSCA Hall of Fame.

40. The August 6 letter recited that, "while a lifetime ban . . . was considered," the Council "stopped short of imposing a lifetime ban." In substance it did not. A suspension of more

[1] The letter also noted that Powell had been subject to other discipline in 2025, although the probation imposed in one prior case ended April 28, 2026.

than ten years, coupled with permanent disqualification from recognition teams and the Hall of Fame and lifetime probation, is effectively a lifetime ban for a 39-year-old professional competitor.

**G. The disparity in treatment.**

41. On information and belief, the Executive Council imposed either no sanctions or probation only on others involved in the events, including the squad members who entered the safety zone behind Powell while he was shooting, in violation of NSCA Rules II-A-16 and VII-E-5.

42. The conduct with which Powell was charged is conduct in which several members of the squad participated. NSCA singled out one participant — the competitor who had just won the event — and ended his career, while leaving the others untouched. Nothing in the August 6 ruling explains that disparity.

43. On information and belief, NSCA has imposed materially lighter sanctions on other members for equal or more serious conduct, including conduct involving physical altercation, threats, cheating, and safety violations.

**H. The internal appeal.**

44. The Rules provide that a member may appeal to the NSSA Officers (a term that is not specifically defined in the applicable rules) within twenty days, but that the suspension "will remain in effect throughout the appeal process." Any hearing on the appeal "will take place at the next regularly scheduled quarterly meeting of the NSSA Officers." The Rules further recite that decisions of the Executive Council following a hearing are "FINAL." Rule IV-E-4.

45. The appeal reproduces every defect in the proceeding it reviews. It affords no access to the statements of the witnesses against Powell, no right to confront or cross-examine them, no

hearing before the deciding body as of right, no record or transcript, and no reasoned decision. It expressly permits the officers to increase the punishment.

46. Powell is filing an appeal contemporaneous with the filing of this civil action, but it will not be heard until the next quarterly meeting of the NSSA Officer, a date that Powell has not been able to confirm.

**I. Immediate and irreparable consequences.**

47. The sanction took effect immediately on August 6, 2026, and is not stayed by the internal appeal.

48. Powell is barred from the 2026 NSCA U.S. Open, which commences August 11, 2026, in Hudson, Wisconsin. See https://www.2026nscausopen.com (official event site). The U.S. Open is one of NSCA's two most important events. A competitive opportunity that occurs once a year and then passes cannot be restored by a later payment of money.

49. Powell's classification, national average, ranking, and All-American standing are being lost as the competitive season proceeds. His eligibility for NSCA recognition teams and for the NSCA Hall of Fame — honors that cannot be recreated after the fact — has been permanently extinguished.

50. On July 16, 2026, following the North Central Regional and expressly "pending any and all disciplinary matters" before NSCA and others, a principal sponsor suspended Powell's sponsorship, suspended his contractual benefits and the accrual and use of his product points, and advised that permanent termination of the sponsorship under Section 2.2(b) of his sponsorship agreement is a "possible contingency" to be decided once the disciplinary matters conclude. Enforcement of the NSCA sanction thus directly threatens the permanent loss of Powell's principal sponsorship.

51. Powell's professional reputation and goodwill — the foundation of his coaching, clinic, and sponsorship income — are being destroyed as the sanction is publicized and honored throughout the sport.

52. Because there is no alternative sanctioned venue in which Powell may compete, each competitive season lost during the suspension is lost permanently. The value of a peak competitive year in a finite athletic career, of a national title not contested, and of a Hall of Fame candidacy foreclosed cannot be measured in money. Powell has no adequate remedy at law for that portion of his injury.

## V. CONDITIONS PRECEDENT AND EXHAUSTION

53. All conditions precedent to Powell's recovery have occurred, have been performed, or have been waived or excused. Fed. R. Civ. P. 9(c).

54. The Executive Council's ruling is final as to the determination it made. The Rules recite that decisions of the Executive Council are "FINAL." Rule IV-E-4.

55. To the extent NSCA contends that Powell must complete the internal appeal described in Rule IV-E before obtaining relief in this Court, that appeal cannot afford the relief Powell seeks and cannot prevent the harm he now faces. It does not stay the sanction. It is not heard until the next regularly scheduled quarterly meeting of the NSSA Officers, which will occur after the 2026 U.S. Open.

56. The appeal affords no access to the evidence, no confrontation, no record, and no reasoned decision — the same defects that make the underlying ruling unreviewable — and it authorizes the officers to increase the punishment. An internal remedy that leaves the sanction in force, that cannot be heard in time, and that reproduces the very deficiencies complained of is not an adequate remedy.

## VI. CLAIMS FOR RELIEF

**COUNT I — Breach of Contract**

57. Powell incorporates the foregoing paragraphs as if fully set forth herein.

58. The NSCA Rules and Regulations, the NSCA Governance Book, and the Bylaws of the National Skeet Shooting Association constitute a valid and binding contract between NSCA and Powell.

59. Powell performed his obligations under that contract, including payment of dues, entry in accordance with the Rules, and timely submission of his written response to the complaint against him, or his performance was excused.

60. NSCA breached that contract. The breaches were not technical departures from procedural detail; taken together they deprived Powell of the process the contract promised and of the benefit of his membership. They include, without limitation:

(a) ratifying and giving continuing effect to a shoot-level disqualification imposed without the notice and "opportunity to be heard prior to disqualification" that Rule IV-F requires, and without the written record that rule requires be forwarded to the NSCA Director;

(b) accepting and acting upon an unsigned protest, Exhibit 5, as a complaint against Powell, when Rule IV-D-2(g)(v) requires that a complaint bear the complainant's signature;

(c) considering and relying upon allegations of conduct "over the last several years," which no timely complaint under Rule IV-D-2(g) placed before the Council, and upon allegations offered on belief rather than personal knowledge;

(d) treating the shoot-level disqualification as proof of a violation, contrary to Rule IV-D-2(g), which provides that "[t]he action of being disqualified from a shoot does not start disciplinary action";

(e) failing to obtain written statements from all known witnesses, including the witnesses Powell expressly identified and the disinterested spectator he named, as Rule IV-D-2(k) requires;

(f) failing to prepare or act upon a recommendation containing all evidence considered, a determination whether the alleged violation occurred, and the recommended discipline, as Rule IV-D-2(l) requires, and failing to issue a ruling stating the evidence considered and a determination of whether the alleged violation occurred, as Rule IV-D-2(n) requires;

(g) deciding the matter on evidence never disclosed to Powell — thirteen witness statements and information from the host club — which he was never permitted to see, answer, or test; and

(h) imposing a composite sanction that the Rules' disciplinary scheme does not contemplate and that bears no reasonable relationship to the conduct properly before the Council, while imposing no sanction at all on other participants in the same conduct.

61. NSCA's discretion under Rule IV-D-2(n) does not excuse these breaches. Discretion as to the sanction is not discretion to disregard the mandatory procedures that condition its exercise. Moreover, the "discretion" nominally afforded the Executive Council is wholly unguided by any principles under the rules.

62. As a direct and proximate result of NSCA's breaches, Powell has sustained damages, including lost competition, purse, and options income; lost sponsorship and endorsement compensation and product benefits; lost instruction, clinic, and coaching income; lost appearance and demonstration fees; and injury to his professional standing, in amounts to be proven at trial and exceeding the jurisdictional minimum. Powell has no adequate remedy at law for the portion of his injury described in Section IV.I above and is entitled to injunctive relief.

63. Powell has retained the undersigned counsel, who is authorized to present this claim, and Powell has presented and hereby presents his claim to NSCA. Powell seeks his reasonable and necessary attorney's fees under Tex. Civ. Prac. & Rem. Code §§ 38.001(b)(8) and 38.002, and pleads that more than thirty days will have elapsed after presentment without tender of the just amount owed before judgment is sought on this claim. NSCA is an "organization" within the meaning of Tex. Civ. Prac. & Rem. Code § 38.001(a) and Tex. Bus. Orgs. Code § 1.002. NSCA is not a religious organization, a charitable organization, or a charitable trust within the meaning of § 38.001(b): it is a membership association organized to sanction and administer competitive shooting for adult competitors, it is not organized or operated exclusively for charitable, religious, educational, or youth sports or youth recreational purposes, and it is not a quasi-governmental entity authorized to perform a function by state law.

**COUNT II — Arbitrary and Capricious Action and Denial of Fundamental Fairness**

64. Powell incorporates the foregoing paragraphs as if fully set forth herein.

65. A valuable pecuniary right is at stake. Membership in good standing is the precondition to Powell's ability to earn his living as a competitor and instructor, and the August 6, 2026 ruling withdraws it for more than a decade and withdraws the associated honors permanently.

The deprivation of the pecuniary benefits incident to membership is a civil and property right that Texas courts protect.

66. Texas law leaves a voluntary association free to manage its own internal affairs, but it does not insulate association action that is arbitrary or capricious, that transgresses the bounds of reason, that is contrary to public policy, or that denies a member the fundamental fairness — notice of the charges and a meaningful opportunity to be heard — that the association's exercise of discretion over a member's livelihood requires.

67. The August 6, 2026 ruling was arbitrary and capricious, and denied Powell fundamental fairness, in that:

(a) Powell was never given the evidence on which the Council relied. Thirteen witness statements and the host club's submission were considered; none was disclosed to him, summarized for him, or made available for response;

(b) Powell never confronted or questioned any adverse witness, never appeared before the Council, and was never afforded a hearing of any kind;

(c) The Council obtained no statement from the disinterested spectator Powell identified, or from the other witnesses he named, although he asked expressly that it do so and although the Rules required it;

(d) The ruling states no findings. It does not say which allegations were sustained, what evidence was credited, or why the sanction followed. Neither Powell nor any reviewing body can test the decision against the record, because no record was made;

(e) The Council relied on assertions of conduct "over the last several years" that were offered on belief, were never particularized, and were never the subject of any timely complaint;

(f) The sanction is grossly disproportionate to the conduct properly before the Council — a mutual verbal dispute among squad members, already addressed by disqualification — and, on information and belief, to sanctions NSCA has imposed for equal or more serious conduct by others; and

(g) The Council imposed a career-ending sanction on one participant in a mutual dispute and no sanction at all on the others, including the participant who by the complainant's own account began it, and offered no explanation for the difference.

68. These are not complaints about the technical application of a rule. Taken together, they describe an adjudication conducted without disclosure, without confrontation, without a hearing, and without findings, resulting in the destruction of the member's profession. NSCA thereby exceeded the bounds of reason, common sense, and fairness within which Texas law confines an association's discretion.

69. Powell is entitled to a judgment declaring the August 6, 2026 ruling void and unenforceable, to injunctive relief restraining its enforcement, and to damages in amounts to be proven at trial.

**COUNT III — Breach of the Implied Duty of Good Faith and Fair Dealing (Pleaded in the Alternative)**

70. Powell incorporates the foregoing paragraphs as if fully set forth herein, and pleads this Count in the alternative to Counts I and II.

71. The relationship between NSCA and Powell is a special relationship. NSCA drafted the membership terms and offered them on a take-it-or-leave-it basis to an athlete who had no bargaining power over them; NSCA controls access to the only forum in which that athlete can practice his profession; and NSCA holds exclusive control over the initiation, investigation, adjudication, and review of the charges by which a member's livelihood is taken away. Those features — unequal bargaining power and one party's exclusive control over the process by which the other's rights are determined — are the features from which Texas law derives a duty of good faith and fair dealing.

72. NSCA breached that duty by exercising its disciplinary discretion arbitrarily and in bad faith, including by: singling Powell out for career-ending discipline arising from a mutual dispute while imposing no discipline on other participants, including the member who by the complainant's own account initiated the vulgar language and hull-throwing; relying on stale and belief-based allegations that no timely complaint placed before it; refusing to disclose the evidence against him or to permit any response to it; disregarding the exculpatory evidence and the rule violations committed against Powell; crediting an unadjudicated shoot-level disqualification as though it established guilt; and imposing a sanction grossly disproportionate to the conduct properly before it.

73. As a direct and proximate result, Powell has suffered the injuries described above, for which he seeks damages and injunctive relief.

**COUNT IV — Declaratory Judgment, 28 U.S.C. §§ 2201–2202**

74. Powell incorporates the foregoing paragraphs as if fully set forth herein.

75. An actual, substantial, and justiciable controversy of sufficient immediacy and reality exists between Powell and NSCA concerning the validity and enforceability of the August 6, 2026

ruling. Powell contends the ruling is void and unenforceable because it was taken in breach of the contract between the parties, was arbitrary and capricious, and denied him fundamental fairness. NSCA contends the ruling is valid and is enforcing it.

76. Powell is entitled to a declaration under 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57 that the August 6, 2026 ruling is void and unenforceable, and that NSCA may not enforce the suspension, the recognition-team and Hall of Fame bans, or the probation imposed by that ruling. Powell further requests all necessary or proper relief based on that declaration under 28 U.S.C. § 2202.

## VII. IRREPARABLE INJURY AND DEMAND FOR INJUNCTIVE RELIEF

77. Powell incorporates the foregoing paragraphs as if fully set forth herein.

78. The threatened injury to Powell is immediate and irreparable: the loss of the 2026 NSCA U.S. Open commencing August 11, 2026; the loss of an entire competitive season and of the remainder of a finite competitive career; the permanent loss of recognition-team and Hall of Fame eligibility; the destruction of professional reputation and goodwill; and the threatened permanent termination of his principal sponsorship. There is no alternative sanctioned venue at which he may compete. Much of this harm cannot be measured or compensated by a later award of money damages, and Powell has no adequate remedy at law.

79. An injunction would cause NSCA no cognizable harm. NSCA would simply continue to recognize Powell's membership as it did before August 6, 2026, and would receive his dues and entry fees.

80. Powell demands, after trial on the merits, a permanent injunction. Powell's application for interim relief pending trial is made by separate instrument filed contemporaneously

herewith, as W.D. Tex. Local Rule CV-65 requires. The permanent injunction Powell seeks would enter an order:

- prohibiting NSCA, its officers, directors, employees, and agents, and all persons in active concert or participation with them who receive actual notice of the order, from enforcing or giving effect to the August 6, 2026 ruling against Powell, including the suspension of his NSCA membership;
- prohibiting NSCA from enforcing or giving effect to the permanent bans on Powell's eligibility for any NSCA recognition team, including the USA Sporting Clays Team and the NSCA FITASC Team, and for nomination to or induction into the NSCA Hall of Fame;
- prohibiting NSCA from enforcing or giving effect to the lifetime disciplinary probation imposed by the August 6, 2026 ruling;
- prohibiting NSCA from barring, and requiring NSCA to permit, Powell's participation as a member in good standing in NSCA-sanctioned competition; and
- requiring NSCA to restore and maintain Powell's NSCA membership in good standing.

81. Powell is willing to post such security as the Court may deem proper under Fed. R. Civ. P. 65(c) in connection with any interim relief.

## VIII. JURY DEMAND

82. Pursuant to Fed. R. Civ. P. 38(b), Powell demands a trial by jury on all issues so triable.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Powell respectfully requests that the Court:

a. enter a declaratory judgment under 28 U.S.C. §§ 2201–2202 that the August 6, 2026 ruling is void and unenforceable;

b. grant the interim relief sought by separate application filed contemporaneously herewith, and after trial enter a permanent injunction prohibiting NSCA and all persons in active concert or participation with it from enforcing or giving effect to the August 6, 2026 ruling, and requiring NSCA to restore and maintain Powell's membership in good standing;

c. award Powell his actual damages in an amount to be proven at trial;

d. award Powell his reasonable and necessary attorney's fees under Tex. Civ. Prac. & Rem. Code § 38.001;

e. award Powell his costs of court and pre- and post-judgment interest as allowed by law; and

f. grant such other and further relief, at law or in equity, to which Powell may be justly entitled.

Respectfully submitted,

COKINOS | YOUNG
10999 IH-10 West, Suite 800
San Antonio, Texas 78230
(210) 293-8700 (Office)
(210) 293-8744 (Fax)

*By: /s/ Marshall B. Swanson*
Stephanie O'Rourke
State Bar No. 15310800
sorourke@cokinoslaw.com
Chance K. Decker
State Bar No. 24069502
cdecker@cokinoslaw.com
Marshall B. Swanson
State Bar No. 24098490
E-mail: MSwanson@cokinoslaw.com

And

THE LAW OFFICES OF STEPHEN A. HESS, P.C.
111 South Tejon, Suite 102
Colorado Springs, Colorado 80903
(719) 471-4516 (Office)
Stephen A. Hess
Bar No. 16899
Email: stephen@stephenahess.com
***(Pending Pro Hac Vice Admission)***

***ATTORNEYS FOR PLAINTIFF BRANDON POWELL***

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---|---|
| 1 | Amended and Restated Bylaws, National Skeet Shooting Association |
| 2 | 2026 NSCA Governance Book |
| 3 | 2026 NSCA Rule Book (rev. 4-22-26) |
| 4 | Hitch Complaint (NSCA Formal Complaint #26-10) |
| 5 | Unsigned Northbrook Protest Letter |
| 6 | Powell Response |
| 7 | August 6, 2026 Suspension Letter |