# EXHIBIT 6

I received the notice and a copy of Mr. Hitch's complaint, and this is my written statement under Rule IV-D-2(j). It is signed, and it is submitted within ten days of my receipt of the notice. I have listed my witnesses at the end, including the ones Mr. Hitch did not name.

I want to be straight with the Council about what happened. I am not going to pretend that squad was a good weekend or that I was perfect on it. I was not. But the complaint in front of you tells the story from one end only, it leaves out who started what, and it asks you to put a lifetime ban on the one man on that squad who went and asked shoot management for help on Friday before any of it got worse.

## 1. What Actually Happened, In Order

Friday, B&P Course. Jonathan Prince and I had a disagreement about a pair I thought was a no bird. I did not get my pair over. The same thing happened to Jonathan a few minutes later, he called no bird, the squad agreed, and he got his pair over. I said out loud, "why does he get the pair over, but I don't?" Jonathan reshot and still missed the bird. He came out of the stand and looked at me and I smiled at him. He told me to quit being a dick and threw his hulls at me. I laughed, because I knew Jonathan was joking, and I told him I am a dick. I also told him he should not be calling his own birds. That was the end of it between me and Jonathan. We got on the cart and went to the next station. That is where Cameron Hicks walked over to me and called Jonathan a cheater.

I want the Council to notice that Mr. Hitch's own complaint says the same thing mine does about that station: Jonathan Prince used the vulgar language first and Jonathan Prince threw the hulls first, at me. Mr. Hitch is not asking you to do anything to Jonathan.

Friday, last station of the Main Event. Cameron ran the station, turned to Jonathan in front of Brett Seibert and said "good luck bitch." Jonathan asked him what he had done to him and told him he had hurt his feelings. Cameron said "fuck you and your feelings." I looked at him and shook my head, and Cameron turned to me and said "good luck to you too bitch." I shot the station and came out and said I hit mine harder than you. That is the whole of what I said.

Friday evening. I went to the Make A Break. Cameron came in later and told me in front of several people that he was not mad at me, that it was all Jonathan. I still did not think Saturday was going to go well after everything he had said, so I asked Brett Seibert to please come out with us the next day. I have been told other people asked him to come out as well. I would ask the Council to sit with that fact for a moment. Under Rule IV-C-8 a member who witnesses a violation is supposed to report it. I reported it, on Friday, before anything physical happened.

Saturday, Promatic Course. Brett and his son Tommy were with the squad. Tommy had a coach's shirt, a whistle, and a piece of rebar wrapped in tape. I honestly thought it was going to be a better day. Instead Cameron was allowed to antagonize me for four straight stations, call me a bitch repeatedly, and tell me over and over that he would make sure Todd won this shoot. Nobody stopped him. At the end of that, Cameron picked up my hulls off the ground, threw them at me and hit me in the chest with them, and told me to put my hulls in the barrel. That is when I finally responded. I ejected my hulls and asked Cameron to back up, because he was standing far closer than three feet. It went from there.

That is the incident Mr. Hitch describes as "aggressive physical intimidation" by me. He describes me walking into Cameron's space. He does not mention that Cameron had just thrown a handful of spent

hulls into my chest, or that I was asking him to get back behind the line. I would also point out that the protest letter filed by Mr. Hicks accuses me of throwing shells that hit him in the chest, on the same day, on the same course. Both of those things did not happen. One of us threw hulls at the other, and Mr. Hitch's own complaint establishes that hull-throwing on that squad started with somebody other than me.

Also on Saturday, on more than one station, Cameron was allowed to get in front of Jonathan Prince and whisper things in my ear while I was actively in the stand shooting. I asked him to back up every time. I address the rules on that below.

I am not asking the Council to take my word for any of Saturday. Brett Turrentine, NSCA #737141, watched the entire Promatic main event from the spectator side. He does not shoot on my squad and he did not file anything against anybody. His signed statement is attached, and it says four things I would ask the Council to read closely.

First, he confirms that Cameron and I argued back and forth and that both of us apologized to other squad members during it. I am not asking to be treated as the only person who behaved on that course. Second, he confirms that Tommy Seibert was carrying a whistle and a piece of rebar he called an "attitude tool," that Brett Seibert stood and watched the entire Promatic event, and that neither of them intervened in any way except one whistle blast that was never explained. Third, he heard Cameron tell me that my swing-through method had not looked good on me since I was a "fat fuck," and he heard me turn to Brett Seibert and ask him out loud how long he was going to let this go on. Mr. Turrentine says Brett Seibert gave no response at all. Fourth, he watched a shooter named Boo Boo Brady tell me to calm down and let it go, and he watched me do exactly that — I went back to my cart and sat there until the squad finished the station.

The last thing in Mr. Turrentine's statement is the one I would most like the Council to weigh. At the end of the Promatic event he watched Cameron Hicks and me fist bump each other and say good shooting. That is what the "perpetual harassment" of that Saturday actually ended in. Two men who had gotten crossways with each other for three hours settled it themselves, on the course, in front of spectators. I would ask what a lifetime ban is supposed to fix about that.

Sunday. Before the main I walked up to the whole squad and told everybody good luck. Cameron told me "fuck you." I did not answer him. I told Jonathan not to engage and to act like they were not there. At the end of the Main Event I congratulated Todd on a well shot round and apologized to him for having to deal with all the upset. His answer to me was "get the fuck away from me I shot like shit." Right after that Cameron told me for the fourth or fifth time that this was not over and that Todd would win, and he said that when he was done he would make sure I never shoot a shotgun again. I told Jonathan to let it go and we left.

I would ask the Council to compare that last paragraph with page 3 of Mr. Hitch's complaint, where he describes me apologizing to him. He remembered the apology. He left out his own answer to it. That is the pattern in the whole document.

**2. Specific Response to the Five Issues**

Issue 1 — Jared Rumer. This one is simply not true and I want it denied on the record. Jared called "bird" instead of "pull" and drew it out. Jonathan repeated it and asked why he called it that way. What I said

was that I thought Jared is a trap shooter and it is a timing thing. Nobody in any way was making fun of Jared. I have never had a problem with Jared Rumer in my life. Mr. Hitch admits in his own complaint that he did not address it at the time and that he does not know whether Jared even heard anything. Jared Rumer is a named witness. Rule IV-D-2(k) requires that his signed statement be obtained. I am asking that it be obtained, because I believe it will end this allegation.

Issue 2 — Hulls and language at Station 6. Addressed above. Mr. Hitch's account and mine agree on the material fact: Jonathan Prince used the vulgar language and threw his hulls at me, and I answered him. He and I both understood it as joking and neither of us has a problem with the other. Arguing a no-bird call is not a rule violation; Rule VI-H expressly gives a shooter the right to protest a call he believes was applied improperly.

Issue 3 — Profanity at the last station of the B&P Course. Mr. Hitch describes this as a mutual exchange, and it was. He does not say what started it, which was Cameron telling Jonathan "good luck bitch" and "fuck you and your feelings" in front of a shoot official. I said one thing after I shot. And when I thought it was going to keep going, I went to Brett Seibert myself.

Issue 4 — The Promatic Course. Addressed above. The complaint starts the story at the moment I stepped out of the stand and stops the clock right before it, which removes the hulls thrown into my chest, the four stations of being called a bitch, and the repeated statements that he would make sure I lost the shoot. Tommy Seibert and Brett Seibert were both standing there for all of it and can say so.

Issue 5 — The remark to Jonathan Prince on Sunday. Jonathan Prince and I are friends and we talk to each other that way. He is the person who would know whether he was insulted, and he is a named witness. If Jonathan tells the Council he took offense, I will apologize to him without argument. What I will not accept is a stranger to the exchange characterizing it for him in a complaint that asks for a lifetime ban.

**3. What the Complaint Does Not Allege**

Mr. Hitch's conclusion says he has repeatedly been the target of mocking and harassment by me over the last several years, and that similar behavior happened this past weekend "to myself and other competitors." I would ask the Council to read Issues 1 through 5 again. Not one of the five incidents he describes is conduct directed at Todd Hitch. Issue 1 is about Jared Rumer. Issues 2, 3 and 4 are about Jonathan Prince and Cameron Hicks. Issue 5 is about Jonathan Prince. The single interaction between Mr. Hitch and me that he actually describes is me apologizing to him.

He also asks you to act on "what I believe to be a documented history of safety concerns and repeated behavioral issues." That sentence is offered on belief, not on personal observation, which is not what his certification says. More important, it obviously asks that you consider events well outside the thirty day period within which a complaint can be made.

**4. Rules That Were Broken On That Squad, and Not By Me**

Safety Zone — Rule II-A-16. When a shooter is in the process of shooting, no one other than the referee or trapper is allowed within three feet, and there is an imaginary line three feet behind the shooter

extending the entire station. Cameron Hicks came inside that line repeatedly while I was in the stand, and I asked him to back up each time. That is a safety rule, not a courtesy.

Communication with a shooter in the stand — Rule VII-E-5. The North Central Regional is a Regional Championship. Under Rule VII-E-5, once a shooter is in the stand at a Regional, the only communication allowed is between the shooter and the Field Judge, and both the shooter and the person communicating with him may be disciplined. Cameron Hicks was talking in my ear while I was actively shooting, in front of shoot officials.

Reporting — Rules IV-C-8 and IV-C-9. I reported this to Brett Seibert on Friday, before Saturday ever happened. If that report had been acted on, the Council would not be reading any of these documents. Instead, in my view, it was treated as a joke. I would ask the Council to determine what written report shoot management submitted under Rule IV-C-9 and what it says, because it was written by people who watched all three days.

I raise these to give the Council the complete picture required by Rule IV-D-2(n), not because I am asking for anyone to be banned. I am not.

**5. Procedural Points**

a. Thirty-day limit. Rule IV-D-2(g) requires a written complaint within thirty days of the alleged violation. Anything from "the last several years" is outside that window and is not properly before the Council. Only conduct at the North Central Regional on July 10–12 is. I mention Cameron Hicks's threat to me at the 2023 South Central Regional only as background on his attitude toward me, and I am specifically not asking for action on it, for the same reason.

b. Contents of the complaint. Rule IV-D-2(g) requires the complaint to contain the names and addresses of all witnesses and the name, address, telephone number and signature of the complainant. I would ask the Director to confirm that those requirements are satisfied before the matter proceeds, as Rule IV-D-2(i) contemplates.

c. Opportunity to be heard before disqualification. Rule IV-F permits shoot management to disqualify a member only when a complaint has been filed in writing and after giving both parties — the party filing and the party complained of — an opportunity to be heard prior to the disqualification. The same rule requires that when a member is disqualified, a written record of the complaint, the response, and the decision be forwarded to the NSCA Director. I would ask the Council to call for that record from Northbrook Sports Club. If it contains no response from me, that is because I was not asked for one before the decision was made, and the Council should weigh the disqualification accordingly.

The sequence matters here, and Mr. Turrentine describes it from the outside. At the end of the shoot, Todd Hitch and I were put into a shoot-off for HOA that had not been announced. I won it. I was declared the champion of the North Central Regional. Hours later I was disqualified. I am not asking the Council to draw any conclusion about why that happened in that order. I am asking it to notice that no complaint was read to me, no response was taken from me, and no opportunity to be heard was given to me at any point in those hours — which is what Rule IV-F requires before a disqualification, not after it. I would also note that Cameron Hicks told me four or five times over that weekend that this was not over and that Todd would win.

d. The expulsion grounds in Rule IV-F do not fit this case. Rule IV-F-1 addresses willful or repeated gun safety violations that endanger people. Rule IV-F-3 addresses sandbagging. Rule IV-F-4 addresses physically assaulting a Field Judge or using abusive language to a Field Judge. Nobody has alleged that I did any of those things. No one has alleged I committed a single safety violation, and no shoot official has said I directed anything at him. What is left is Rule IV-F-2, which gives shoot management discretion to cause the withdrawal of a contestant it considers unsportsmanlike. That discretion was already exercised at Northbrook when I was disqualified.

e. Witness statements. Rule IV-D-2(k) requires the Director to attempt to obtain signed written statements from all known witnesses, and requires that every witness statement be in writing and signed. I am asking that this be done for every member of that squad and for both shoot officials, not only for the people who filed. I have named them below.

**6. Proportionality**

Mr. Hitch asks for the strongest discipline available, including a lifetime ban. I would ask the Council to weigh that against the record actually in front of it. This was a mutual conflict on one squad over three days. The club disqualified two of us for it, and Mr. Hitch supports both disqualifications, which is itself an acknowledgment that the conduct ran in both directions. I have no prior NSCA discipline. No safety rule violation by me has been alleged by anyone. I asked shoot management for help before the worst of it happened, which is the opposite of what a person trying to interfere with competitors does. I have already been penalized once for that weekend.

A lifetime ban is what the NSCA has available for the most serious conduct in the sport. Whatever the Council decides I got wrong on that squad, it is not that.

I would add one thing about what a ban would actually reach. I make my living competing and coaching. Mr. Turrentine, who has shot over 14,000 registered targets this year and travels the country and into Canada to compete, writes that he does not believe the disqualification should have been imposed and that a ban would be a disservice to the sport and to the students who come to the sport looking for coaching. He is one shooter and the Council can weigh him as one shooter. But he is a shooter with no stake in this who took the time to write, and Rule IV-D-2(k) requires that statements be gathered from known witnesses on both sides, not only from the two men who filed.

**7. What I Am Asking For**

1. That the complaint be dismissed, or in the alternative that the disqualification already imposed at Northbrook be treated as the discipline for that weekend.

2. That signed statements be obtained under Rule IV-D-2(k) from Jared Rumer, Jonathan Prince, Cameron Hicks, Brett Seibert, Tommy Seibert, Brett Turrentine, Boo Boo Brady, and the club manager before any vote is taken.

3. That the written record of the complaint, the response and the decision that Rule IV-F requires Northbrook Sports Club to forward to the NSCA Director be obtained and made part of this file.

4. That any prior record the NSCA holds on me that the Council intends to consider be disclosed to me with a reasonable opportunity to respond.

5. That all conduct on that squad be measured by the same standard, including the hulls thrown at me, the language directed at me, the statements that I would never shoot a shotgun again, and the repeated entries inside the three-foot safety zone while I was in the stand.

6. That if the Council believes some corrective action is warranted, it be proportionate — a warning, a defined probationary period, or a conditional suspension — rather than a permanent ban.

**8. Witnesses**

Under Rule IV-D-2(j), the following witnesses are identified, including those not named in the complaint:

Larry Brady (Booboo) 270-699-1037
Enzo Di Giovanni 647-821-9771
Brett Turrentine 740-260-5392
Tiffany Goodin 478-662-2245

Also I have attached the video of Brett Siebert talking to Tommy Siebert about his " attitude tool" he made and carried around with him during the Main Event on Saturday.

[signature]