**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **BRANDON POWELL,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:26-cv-26-5102 |
| | § | |
| **NATIONAL SKEET SHOOTING ASSOCIATION d/b/a NATIONAL SPORTING CLAYS ASSOCIATION,** | § | |
| | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFF'S EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff Brandon Powell respectfully applies, pursuant to Fed. R. Civ. P. 65 and W.D. Tex. Local Rule CV-65, for a temporary restraining order and, after notice and hearing, a preliminary injunction restraining Defendant National Skeet Shooting Association d/b/a National Sporting Clays Association ("NSCA") from enforcing the disciplinary ruling it issued against Powell on August 6, 2026. This application is filed as an instrument separate from the Verified Complaint, as Local Rule CV-65 requires, and the legal authority supporting it is cited within the motion itself, as Local Rule CV-7 requires.

## I. INTRODUCTION AND RELIEF REQUESTED

1. This application is urgent. The 2026 NSCA U.S. Open — one of the two most important competitions in the sport of sporting clays — commences on August 11, 2026, in Hudson, Wisconsin. Plaintiff Brandon Powell is a two-time World Champion, a two-time National Champion, and he earns his living competing and coaching in this field.

2. On August 6, 2026, NSCA suspended Powell for the remainder of 2026 and for ten additional calendar years, barred him permanently from every NSCA recognition team and from the NSCA Hall of Fame, and placed him on lifetime probation. The stated basis was a mutual verbal dispute among five squad members over three days of a regional tournament and a vague assertion that his conduct was detrimental to the sport. Two other individuals involved in the same series of alleged misconduct were given probation only, including the squad[1] member who, by the complainant's own account, used vulgar language toward Powell first and threw spent shells at him first.

3. The NSCA Executive Council purports to have decided the matter on thirteen witness statements and a submission from the host club. The host club itself had disqualified Powell after he won the competition at issue without a hearing, a patent violation of NSCA rules. With respect to the other evidence, Powell submitted his own statement with two supporting statements, and was shown the complaint that started the inquiry by Mr. Hitch together with another unsigned letter. However, Powell was not given the report by the host club nor the bulk of the witness statements. He was given no hearing, no opportunity to confront or question any witness (much less know what the evidence against him was), no record, and no specific findings. NSCA apparently obtained no statement from the disinterested spectator Powell identified, although he asked expressly that it do so and although NSCA's own rule required it. In addition, the complaint on its face sought to invoke asserted misconduct by Powell well outside the time period imposed by the NSCA rules. Finally, the NSCA Executive Council relied on statements largely from individuals who have vested interests in eliminating Powell from competition.

[1] In a sporting clays competition, a "squad" is a collection of competitors who are assigned to shoot together during part of the competition. They are competitors rather than teammates.

4. Powell asks the Court to suspend the operation of that ruling so that he may compete while this action proceeds. The relief costs NSCA nothing: it would receive his dues and his entry fees, exactly as it did before August 6, 2026.

5. Powell seeks interim relief in two stages. At the temporary restraining order stage he asks only for what is time-critical — an order restraining NSCA from giving effect to the suspension of his membership so that he may enter the 2026 NSCA U.S. Open and other events occurring before a preliminary injunction can be heard. At the preliminary injunction stage he asks additionally that the recognition-team ban, the Hall of Fame ban, and the lifetime probation be enjoined pending trial.

6. The grounds for this application are set out in the Verified Complaint filed contemporaneously herewith, the Unsworn Declaration of Brandon Powell filed in support hereof as Exhibit A, and the exhibits appended to the Verified Complaint, all of which are incorporated by reference.

## II. LEGAL STANDARD

7. A movant is entitled to a temporary restraining order or preliminary injunction on a showing of (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm to the party to be enjoined, and (4) that the injunction will not disserve the public interest. Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir. 2011); Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974).

8. To the extent any part of the requested order is characterized as mandatory rather than prohibitory, Powell recognizes that such relief is disfavored and warranted only in unusual circumstances. Those circumstances are present. The order sought at the temporary restraining

order stage merely suspends the operation of NSCA's ruling and restores the membership NSCA itself recognized until August 6, 2026. That is preservation of the position of the parties as it stood before NSCA acted.

## III. GROUNDS FOR RELIEF

### A. Powell is likely to succeed on the merits.

9. Texas law applies to the merits of this dispute. Texas courts generally decline to intervene in the internal affairs of a voluntary association, but they will intervene where a valuable pecuniary or property right is at stake and the association's action is arbitrary, capricious, contrary to public policy, or attended by a denial of fundamental fairness. Dallas Cty. Med. Soc'y v. Ubiñas-Brache, 68 S.W.3d 31, 41-42 (Tex. App.—Dallas 2001, pet. denied) ("judicial review is proper only when the actions of the organization are illegal, against some public policy, or are arbitrary or capricious" and "Courts have gone so far as to state that they will not review a private association's failure to conduct its business according to its own procedures except for the purpose of protecting some civil or property right"); Stevens v. Anatolian Shepherd Dog Club of Am., Inc., 231 S.W.3d 71, 75 (Tex. App.—Houston [14th Dist.] 2007) ("courts will interfere in the inner-dealings of a private association if a valuable right or property interest is at stake," but finding that plaintiff "provided no evidence of the pecuniary detriment" of association action to warrant exercise of jurisdiction.)

10. The Fifth Circuit has applied that law to a national competition and registry association on facts closely resembling these. In Hatley v. American Quarter Horse Ass'n, 552 F.2d 646 (5th Cir. 1977), the court held that a member had "a justiciable right under Texas law" because the association's decision "would have had grave economic consequences," and that "[t]he diminution of value caused by defendants represents a destruction of property which an Erie-

mindful court cannot ignore." Id. at 655. The court further held that "Texas courts, in adjudicating claims such as Hatley's, require something akin to traditional due process on the part of voluntary associations," that association rules are "insulated from judicial review only insofar as they are reasonable in substance and administration," and that a decision requiring "the exercise of discretion" — discretion the association had exercised favorably for comparable members — made "without a hearing violated Texas due process." Id. at 656.

11. Powell's pecuniary stake is at least as concrete as the plaintiff's in *Hatley*. Membership in good standing is the precondition to every source of his professional income: tournament winnings and options, sponsorship and endorsement contracts and product benefits, instruction and clinic fees, and appearance fees. There is no alternative sanctioned venue in the United States at which he can compete. The suspension runs to January 1, 2037; Powell is 39 years old and while he physically could resume competition in ten years, the practical effect of the suspension is to end his career.

12. The conduct of the proceeding was fundamentally unfair. Powell never saw most of the witness statements or the host club's submission on which the Council relied. He never learned what those witnesses said. He never confronted or questioned any of them. He never appeared before the Executive Council, and no hearing of any kind was held. No record exists. The ruling makes no findings: it does not say which allegations were sustained, what evidence was credited, why the sanction followed, or what NSCA rule was employed to guide the Executive Council's exercise of its power. Indeed, as the Verified Complaint sets out, there does not appear to be any such guidance in the NSCA rules themselves.

13. The ruling is also arbitrary and capricious. NSCA ended the career of one participant in a mutual dispute and imposed only probation on the others — including the

participant who, by the complainant's own account, started it — and offered no explanation for the difference. It relied on assertions of conduct "over the last several years" that were offered on belief and that no timely complaint had ever placed before it. It treated a shoot-level disqualification as though it established guilt, although its own rule provides that "[t]he action of being disqualified from a shoot does not start disciplinary action." And the sanction — exclusion for more than a decade plus permanent disqualification from recognition teams and the Hall of Fame — bears no proportion to a three-day mutual verbal dispute among squad members already addressed by disqualification.

14. NSCA also breached its contract with Powell. An association's bylaws and rules constitute a contract between the association and its members under Texas law. Monasco v. Gilmer Boating & Fishing Club, 339 S.W.3d 828, 838 n.14 (Tex. App.—Texarkana 2011, no pet.). NSCA ratified a shoot-level disqualification imposed without the "opportunity to be heard prior to disqualification" that Rule IV-F requires; it acted on an unsigned protest although Rule IV-D-2(g)(v) requires a complainant's signature; it obtained no statements from the witnesses Powell identified although Rule IV-D-2(k) requires that it attempt to do so; and it issued no ruling stating the evidence considered (apart from a list of purported witnesses) and a determination whether the alleged violation occurred, as Rule IV-D-2(n) requires.

**B. Powell faces a substantial threat of immediate, irreparable injury.**

15. The ruling took effect immediately on August 6, 2026, and is not stayed by the internal appeal, which is not heard until the next quarterly meeting of the NSSA Officers and which expressly permits the officers to increase the punishment. With regard to this issue, Powell is filing an appeal as permitted to the NSCA Executive Council ruling, but his access to member portions of the NSCA web site has been terminated and he has not been able to determine the date

of the next quarterly meeting of the NSSA Officers. As such, recourse to an internal appeal is futile for purposes of this one competition at issue.

16. Not all of the injuries are compensable in damages:

- The 2026 U.S. Open opens on August 11, 2026, and occurs once. A competitive opportunity that passes cannot be restored by a later payment.
- Eligibility for NSCA recognition teams, including the USA Sporting Clays Team and the NSCA FITASC Team, and for the NSCA Hall of Fame has been permanently extinguished. Those honors cannot be recreated after the fact.
- Powell has no alternative sanctioned venue. There is no other tour or circuit at which he can compete during the suspension. A competitive career is finite; a suspension of more than ten years consumes what remains of his.
- His classification, national average, ranking, and All-American standing are being lost as the season proceeds.
- His professional reputation and goodwill — the foundation of his coaching, clinic, and sponsorship income — are being destroyed as the ruling is publicized and honored throughout the sport. Loss of goodwill and of business relationships is the paradigm of injury that damages cannot measure.
- On July 16, 2026, a principal sponsor suspended his sponsorship, his contractual benefits, and the accrual and use of his product points "pending any and all disciplinary matters," and advised that permanent termination under Section 2.2(b) of the sponsorship agreement is a "possible contingency" to be decided once those matters conclude. Enforcement of the ruling directly threatens the permanent loss of that sponsorship.

17. *Hatley* is instructive here as well. The Fifth Circuit treated the destruction of economic value worked by an association's decision as a reason for a court to act, not a reason to relegate the member to damages, and it rejected the association's post-suit offer of a hearing as an adequate substitute for relief. 552 F.2d at 655-656.

**C. The balance of harms favors an injunction.**

18. An order restraining enforcement of the ruling restores the status quo that prevailed for years before August 6, 2026. NSCA would continue to collect Powell's dues and entry fees and would continue to administer its competitions exactly as before. It has no legitimate interest in excluding a member while the lawfulness of that exclusion is adjudicated. The harm to Powell if relief is denied is total and permanent; the harm to NSCA if relief is granted is nonexistent.

**D. An injunction serves the public interest.**

19. The public interest lies in ensuring that an organization that controls access to an entire sport, and to the livelihoods of those who compete in it, exercises that power within the bounds of its own rules and of reason, common sense, and fairness. Texas law has long recognized that interest, and *Hatley* enforced it against a national competition association.

**E. Security under Rule 65(c) should be nominal.**

20. The amount of security is committed to the Court's discretion, and the Court "may elect to require no security at all." Corrigan Dispatch Co. v. Casa Guzman, S.A., 569 F.2d 300, 303 (5th Cir. 1978). Because the requested order merely preserves the status quo ante and exposes NSCA to no costs or damages, Powell respectfully requests that security be set in a nominal amount. Powell is prepared to post such security as the Court deems proper.

## IV. RELIEF REQUESTED

WHEREFORE, Powell respectfully requests that the Court enter a temporary restraining order:

- prohibiting NSCA, its officers, directors, employees, and agents, and all persons in active concert or participation with them who receive actual notice of the order, from enforcing or giving effect to the suspension of Powell's NSCA membership imposed by the August 6, 2026 ruling; and
- prohibiting NSCA from barring, and requiring NSCA to permit, Powell's participation as a member in good standing in NSCA-sanctioned competition, including the 2026 NSCA U.S. Open commencing August 11, 2026.

Powell further requests that the Court set this application for hearing on a preliminary injunction at the earliest possible time and within the period allowed by Fed. R. Civ. P. 65(b)(2), and that following that hearing the Court enter a preliminary injunction granting the relief above and additionally:

- prohibiting NSCA from enforcing or giving effect to the permanent bans on Powell's eligibility for any NSCA recognition team, including the USA Sporting Clays Team and the NSCA FITASC Team, and for nomination to or induction into the NSCA Hall of Fame;
- prohibiting NSCA from enforcing or giving effect to the lifetime disciplinary probation imposed by the August 6, 2026 ruling; and
- requiring NSCA to restore and maintain Powell's NSCA membership in good standing during the pendency of this action.

Powell further requests that security under Fed. R. Civ. P. 65(c) be set in a nominal amount, and that the Court grant such other and further relief to which he may be entitled. A proposed order is submitted herewith.

Respectfully submitted,

COKINOS | YOUNG
10999 ih-10 West, Suite 800
San Antonio, Texas 78230
(210) 293-8700 (Office)
(210) 293-8744 (Fax)

*/s/ Marshall B. Swanson*
Marshall B. Swanson
State Bar No. 24098490
E-mail: MSwanson@cokinoslaw.com

And

THE LAW OFFICES OF STEPHEN A. HESS, P.C.
111 South Tejon, Suite 102
Colorado Springs, Colorado 80903
(719) 471-4516 (Office)
Stephen A. Hess
Bar No. 16899
Email: stephen@stephenahess.com
***(Pending Pro Hac Vice Admission)***

***ATTORNEYS FOR PLAINTIFF BRANDON POWELL***

**CERTIFICATE OF COUNSEL UNDER FED. R. CIV. P. 65(b)(1)(B) REGARDING NOTICE AND CONFERRAL WITH RESPECT TO RELIEF SOUGHT**

This application is made on notice to Defendant through its counsel, who was identified in the suspension letter at issue. On August 7, 2026, I spoke with counsel for the Defendant by phone and apprised him of the intent to file. Upon filing, I will immediately serve a copy of the foregoing on counsel for Defendant by email. In addition, I exchanged communications with counsel for Defendant on August 7 and August 9, 2026 concerning the relief sought, and represent that Defendant opposes the application set forth above. In addition, the undersigned will notify counsel for the Defendant immediately upon the setting of this matter for any emergency hearing. To the extent the Court treats this application as one presented without notice in the absence of formal service under Fed.R.Civ.P. Rule 4, the specific facts showing that immediate and irreparable injury will result to Powell before Defendant can be heard in opposition are set out in the Verified Complaint, and the Unsworn Declaration of Brandon Powell, both verified under 28 U.S.C. § 1746, and in particular in its allegations concerning the August 11, 2026 commencement of the 2026 NSCA U.S. Open.

*/s/ Marshall B. Swanson*
Marshall B. Swanson