UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **BRANDON POWELL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:26-CV-5102-FB** |
| | § | |
| **NATIONAL SKEET SHOOTING ASSOCIATION d/b/a NATIONAL SPORTING CLAYS ASSOCIATION,** | § | |
| | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT NATIONAL SKEET SHOOTING ASSOCIATION D/B/A NATIONAL SPORTING CLAYS ASSOCIATION'S RESPONSE IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR TEMPORARY INJUNCTION**

COMES NOW, Defendant National Skeet Shooting Association d/b/a National Sporting Clays Association ("NSSA" or "Defendant") and files this Response in Opposition to Plaintiff's Application for a Temporary Restraining Order and Motion for Temporary Injunction, and would show the Court as follows:

## I. INTRODUCTION & BACKGROUND

This lawsuit and application for temporary restraining order (the "Application") must fail because Brandon Powell has no right to be a member of the NSCA or participate in any NSCA events, has failed to establish that this Court has jurisdiction to address his claims, and cannot meet the exacting standing required for temporary restraining order. The NSCA's Executive Council has discretion to discipline its members, including to suspend or expel them, as outlined in the NSCA Rules & Regulations (the "NSCA Rules"):

> The Executive Council may, at any time at its discretion, suspend, expel or discipline any member or member club for the violation of any NSCA rule or regulation. State Associations also have the same authority under their association by-laws. The NSCA encourages State Associations, if one exists, to take the first

> disciplinary action(s), then notify the NSCA of the complaint, action(s) taken, and if there is a request for further action by the NSCA.
>
> …
>
> **The NSCA Executive Council shall have the discretion to suspend or expel a member or to impose any other disciplinary action it deems appropriate.**

NSCA Rules §§ IV-D-1, IV-D-2-n-iv (emphasis original)

Because the NSCA had discretion to discipline Mr. Powell in the manner it did, Plaintiff agreed to abide by the NSCA's decision, and for the reasons set forth below, including safety concerns, Plaintiff has failed to establish the necessary grounds to pursue a claim or to be entitled to injunctive relief and this Court should deny Plaintiff's Application.

## II. STANDARD OF REVIEW

1. A temporary restraining order is an extreme remedy that is not appropriate here. "A temporary restraining order is an extraordinary, and perhaps drastic remedy; one is not granted unless the movant clearly carries the onerous burden of persuasion as to all the elements" required for issuance of such an order. *Watson v. Willbros Grp., Inc.*, No. 4:15CV114, 2015 U.S. Dist. LEXIS 44953, at *18 (E.D. Tex. Apr. 6, 2015) (citing *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (5th Cir. 1983)). Thus, it is Plaintiff's burden to prove that (1) there is a substantial likelihood that they will prevail on the merits of its suit; (2) there is a substantial threat that they would suffer irreparable injury without an injunction; (3) its threatened injury outweighs the threatened harm to Defendants; and (4) granting the injunction will serve the public interest. *See, e.g.*, *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012). "The burden of persuasion on all of the four requirements for a preliminary injunction is at all times upon the plaintiff." *Canal Auth. of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). "[A preliminary injunction] should only be granted if the movant has clearly carried the burden of persuasion on all four…prerequisites." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621

(5th Cir. 1985); *see also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008) (stating that a temporary restraining order "may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

2. "The decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light Co.*, 760 F.2d at 621-22. A preliminary injunction should not issue "unless the court's ability to render a meaningful decision on the merits would otherwise be in jeopardy." *Callaway*, 489 F.2d at 573. Courts will deny preliminary injunctions or temporary restraining orders when the movant fails to sufficiently establish any one of the four criteria described above. *Black Fire Fighters Ass'n v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir. 1990).

## III. ARGUMENTS AND AUTHORITIES

### 1. This Court lacks Subject Matter Jurisdiction to hear Plaintiff's argument.

3. Plaintiff claims that his rights have been violated by being suspended from the NSCA. In particular, Plaintiff alleges the NSCA breached the contract between them when it suspended Plaintiff from the NSCA. However, this Court does not have jurisdiction to decide Plaintiff's claim because of Texas' non-intervention doctrine. "Courts are not disposed to interfere with the internal management of a voluntary association." *Bhd. of R. Trainmen v. Price*, 108 S.W.2d 239, 241 (Tex. Civ. App. 1937, writ dism'd w.o.j.). "The policy of non-intervention in the affairs of private, non-profit associations, as shown above, is a well-established and a wise and necessary policy." *Harden v. Colonial Country Club*, 634 S.W.2d 56, 59 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.). In fact, by becoming a member of a voluntary organization, "a person agrees to subject himself, within legal limits, to the organization's authority to make and to administer its rules." *Williams v. Smith*, No. 05-19-01251-CV, 2020 Tex. App. LEXIS 9809, at *4-5 (Tex. App.—Dallas Dec. 14, 2020, pet. denied). "Accordingly, the threshold standards for bringing any

recognized common law suit against a voluntary private association are substantial." *Id*. at *5 (cleaned up). "Absent evidence of fraud, illegality, or a threat to the plaintiff's valuable property rights or civil rights, a trial court may not intervene in the association's internal management." *Id*. "We think it is the right of a private, non-profit organization to manage, within legal limits, its own affairs without interference from the courts." *Juarez v. Tex. Ass'n of Sporting Officials El Paso Chapter*, 172 S.W.3d 274, 279 (Tex. App.—El Paso 2005, no pet.).

4. In this case, the Plaintiff subjected himself as a member of the NSCA to the Executive Council's discretion to suspend or expel him for violation of any rule or regulation, or impose any other disciplinary action it deems appropriate. *See* Ex. A-2, NSCA Rules §§ IV-D-1, IV-D-2-n-iv. Plaintiff also agreed to "abide by the[] rules and to accept all official decisions of the NSCA in interpreting and/or applying the[] rules." *See id.* at §§ IV-B, IV-D.

5. At its core, Plaintiff's Complaint alleges a breach of contract claim for an alleged violation of the NSCA Rules, but "the requirements for judicial review are more than a mere breach of [] policies." *Dall. Cty. Med. Soc'y & State Med. Ass'n v. Ubinas-Brache*, 68 S.W.3d 31, 42-43 (Tex. App.—Dallas 2001, pet. denied). In the *Ubinas-Blache* case, a physician who was expelled from two medical organizations had no cause of action because "a breach of contract action to maintain membership in a private association is not a well-recognized or well-defined common law action in this state because of the doctrine of judicial non-intervention." *Ubinas-Brache*, 68 S.W.3d at 42. In that case, the Court noted that Plaintiff's allegations were merely that the decision made by Defendants constituted a breach of contract and violated his due process rights and concluded that "the common law does not provide a well-recognized remedy for the claims [Plaintiff] alleged." It is the same here, and Plaintiff has no cognizable cause of action due to the doctrine of non-intervention.

6. In *Williams v. Smith*, the 5th Court of Appeals in Dallas applied the doctrine of non-intervention and held that the Court did not have jurisdiction to hear Plaintiff's challenge to his suspension from his two pre-paid lifetime memberships in a fraternity because his pleadings did not allege fraud, illegality, or deprivation of any civil right, and there was no evidence that his treatment was arbitrary, fraudulent, or illegal, that the trial court lacked subject matter jurisdiction over claims regarding the organization's internal management. *Williams*, No. 05-19-01251-CV, 2020 Tex. App. LEXIS 9809, at *7.

7. It is the same here. Plaintiff was disciplined for his conduct as part of his membership in a voluntary organization that vests its executive council with the discretion to suspend or expel any member for violations of the NSCA Rules. Plaintiff has not (and cannot) allege any fraud, illegality, or deprivation of any civil right, and therefore this Court lacks jurisdiction to address Plaintiff's claim.

8. In an analogous case, the 7th Circuit Court of Appeals (applying Indiana law) noted that "a voluntary association may 'without direction or interference by the courts,' adopt and enforce its own rules" and held, with regard to an accounting organization that Plaintiff was disciplined by, that "even if the AICPA were to expel or suspend Plummer, such an action would not deprive the appellant of anything that the law recognizes as a property or civil right." *Plummer v. AICPA*, 97 F.3d 220, 228 (7th Cir. 1996). The Court went on to note that "[i]f expelled or suspended, Plummer could still practice the accounting profession, but would not be able to advertise membership in the AICPA or take advantage of the benefits associated with membership in that organization" and concluded that "[b]ecause Plummer's case falls into neither of the exceptions delineated in Givens (discussed supra), under Indiana law the courts (including this court) are not empowered to review the AICPA's findings or provide a remedy in the form of

declaratory relief." *Id*. Just like the Plaintiff in the *Plummer* case, Plaintiff in this matter could also practice his craft, just not in NSCA sponsored venues. *See* Ex. A, Declaration of Michael Hampton at ¶ 36.

9. The main case that Plaintiff relies upon, *Hatley v. American Quarterhorse Association*, is distinguishable from the case at bar for several reasons, not the least of which is that the Plaintiff in that case was a member in good standing whose right to register his colt was denied (i.e. a deprivation of one of the rights he was entitled to under his membership not a suspension of his membership). In that case the Court conceded that "the right to membership is not precisely congruent to the right to have a registration application fairly considered." *See Hatley v. Am. Quarter Horse Asso.*, 552 F.2d 646, 655 (5th Cir. 1977). Importantly, the court held that "[h]ad Rule 92 specifically provided that registration under 92B or 92C was within the sole discretion of the Executive Committee without the requirement of a hearing, then conceivably defendants could have prevailed under a consent or waiver theory." *Id.* at 657. In contrast to the situation addressed by the *Hatley* Court, the NSCA Rules here expressly grant discretion to the NSCA Executive Council to suspend or expel any member for any violation of the NSCA Rules, and the Plaintiff agreed to comply with that decision. Thus, the holding in Hatley is inapplicable here. The *Hatley* case is further distinguishable given that Plaintiff in this case has an opportunity to request a hearing by appealing to the NSSA Officers (but has not).

10. Plaintiff claims that the NSCA's Executive Council's decision was arbitrary and capricious. "In many respects the words arbitrary and capricious are synonymous. The word capricious means freakish, whimsical, fickle, changeable, unsteady, and arbitrary. Arbitrary is defined as fixed or done capriciously or at pleasure; not founded in the nature of things; non-rational; not done or acting according to reason or judgment; depending on the will alone;

tyrannical; despotic." *Webb v. Dameron*, 219 S.W.2d 581, 584 (Tex. Civ. App.—Amarillo 1949, writ ref'd n.r.e.). Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration however much it may be believed that an erroneous conclusion was reached. *Pizzitola v. Hous. Indep. Sch. Dist.*, No. 13-05-249-CV, 2006 Tex. App. LEXIS 4369, at *14 (Tex. App.—Corpus Christi May 18, 2006, no pet.) Here, Plaintiff described in his Complaint the process through which the NSCA reached its decision, does not dispute that he violated NSCA Rules, and cannot establish a cause of action merely because he does not like the outcome.

11. In sum, Plaintiff has not met his burden to establish sufficient facts to justify this Court's intervention in the governance of a private voluntary organization and this Court should find that it has no subject matter jurisdiction over this matter.

**2. Plaintiff Cannot Establish the Criteria Necessary for a Temporary Restraining Order.**

12. Even assuming *arguendo* that this Court determines that it has jurisdiction to hear Plaintiff's claims, Plaintiff cannot establish any of the four criteria that would entitle him to a temporary restraining order.

**A. Plaintiff Failed to Show a Substantial Likelihood of Success on the Merits**

13. Plaintiff cannot show a substantial likelihood of success on the merits. In his Application, Plaintiff enumerated two requests for injunctive relief in the form of a restraining order: prohibiting the NSCA from enforcing the suspension of Plaintiff's membership, and requiring the NSCA to allow Plaintiff to participate as a member in good standing in the 2026 U.S. Open commencing August 11, 2026. *See* Dkt. No. 3 at p. 9. To be entitled to the requested injunctive relief, however, Plaintiff must first prove a substantial likelihood of success on the merits of one or more of its claims. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

14. Plaintiff's lawsuit asserts four causes of action: (I) breach of contract, (II) arbitrary and capricious action and denial of fundamental fairness; (III) breach of implied covenant of good faith and fair dealing; and (IV) declaratory judgment. Plaintiff cannot show a likelihood of success on the merits of any of these claims.

15. Plaintiff does not rely on his good faith and fair dealing claim (Count III) or declaratory judgment claim (Count IV) in seeking the temporary restraining order, and therefore has not met his burden of proving success on the merits on those counts.

16. Count II appears to be Plaintiff's attempt to plead around the non-intervention doctrine, which is addressed above, and is not actually a separate cause of action. Moreover, membership in a voluntary non-profit organization is not an actionable valuable property right. *Williams*, No. 05-19-01251-CV, 2020 Tex. App. LEXIS 9809, at *5; *Harden v. Colonial Country Club*, 634 S.W.2d 56, 59 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.).

17. Additionally, Plaintiff's ability to make a living has not been impacted to the extent he claims. There are still several avenues available to him within the sporting clays industry through which he can earn income. For example, assuming the host clubs allow him on site, Mr. Powell can continue to be involved in target setting for shooting events, which can be a significant source of income and does not require him to compete as an NSCA member. Ex. A, Hampton Dec. at ¶ 36. He is also still able to participate in Make-A-Break competitions held in conjunction with events because those are non-registered competitions. *Id.* Additionally, the suspension does not prevent Mr. Powell from providing shooting instruction, for which accomplished shooters can command significant fees. *Id.* He remains a well-known and accomplished shooter. *Id*. In other words, Plaintiff has other ways he could earn a living without being an NSCA member.

18. As a result, this Court should not intervene in the private affairs of a voluntary non-profit organization. Even to the extent this Court were to credit Plaintiff's allegations about the impact on his shooting career, Plaintiff cannot sustain his burden of showing a likelihood of success on the merits. That is because, even "where a member's property rights, for example, his right to make a living, are involved, the Court's review is limited: the courts will interfere to ascertain whether or not the proceedings within the association were pursuant to rules and laws of the association and whether there was anything therein in violation of the laws of the land … because the articles of association or constitution and the bylaws so agreed upon constitute a contract which the courts will enforce both as between the members themselves and as between the association on the one hand and the individual members on the other, and their rights and powers, and duties and liabilities are measured accordingly." *Urantia Found. v. First Urantia Soc'y of Hous.*, No. H-80-1428, 1982 U.S. Dist. LEXIS 10260, at *5 (S.D. Tex. 1982)(cleaned up). Here, the NSCA followed the NSCA Rules in disciplining Plaintiff, and therefore Plaintiff cannot prove a substantial likelihood of success.

19. Plaintiff also cannot meet his burden to show a substantial likelihood of success on his breach of contract claim (Count I) because his own pleadings, the NSCA Rules, and other undisputed facts contradict his claims. Plaintiff's breach of contract claims are addressed in turn, below:

- Breach Claim 1: Ratifying and giving continuing effect to a shoot-level disqualification imposed without a "opportunity to be heard prior to disqualification" that Rule IV-F require, and without the written record that rule requires to be forwarded to the NSCA Director. *See* Dkt. No. 1 at ¶60(a).

  Response: As set forth in the NSCA Rules, disqualification and expulsion "from an event" under NSCA Rule § IV-F, is an entirely different process than the suspension, expulsion, or discipline of a member under NSCA Rule § IV-E. *See* Ex. A-2. Moreover, the "shoot-level" disqualification of Mr. Powell was not action by the NSCA, but rather that of the host club for the event. The NSCA initiated Formal Complaint #26-10 after the event when

it received a written complaint by Todd Hitch. *See* Ex. A, Hampton Dec. at ¶¶ 11-12; Ex. A-6.

- Breach Claim 2: Accepting and acting upon an unsigned protest, Exhibit 5, as a complaint against Powell, when Rule IV-D-2(g)(v) requires that a complaint bear a complainant's signature. *See* Dkt. No. 1 at ¶60(b).

  Response: NSCA Formal Complaint #26-10 was initiated, not by Mr. Hicks' handwritten complaint, but the complaint of Todd Hitch. *See* Ex. A, Declaration of Michael Hampton at ¶¶ 11-12; Ex. A-6. Moreover, even if the NSCA had acted on the unsigned handwritten complaint to initiate proceedings (it did not), "[t]he NSCA Director or Executive Director has the discretion to consider and investigate … any complaint that does not meet" the requirements of NSCA Rule § IV-D-2. *See* Ex. A-2, NSCA Rules at § § IV-D-2(i).

- Breach Claim 3: Considering and relying upon allegations of conduct "over the last several years," which no timely complaint under Rule IV-D-2(g) placed before the Council, and upon allegations offered on belief rather than personal knowledge. *See* Dkt. No. 1 at ¶60(c).

  Response: There is no requirement in the NSCA Rules that complaints be based on personal knowledge and no requirement that the Executive Council consider only the current conduct when determining appropriate disciplinary conduct for rule violations. As Plaintiff acknowledges, the Executive Council has broad discretion in considering and deciding discipline for its members. *See e.g.* Dkt. No. 1 at ¶ 18 ("The Rules confer unfettered and unguided discretion on the Executive Council as to the sanction.")

- Breach Claim 4: Treating the shoot-level disqualification as proof of a violation, contrary to Rule IV-D-2(g) which provides that "the action of being disqualified from a shoot does not start disciplinary action." *See* Dkt. No. 1 at ¶60(d).

  Response: The "shoot-level" disqualification did not start the disciplinary action in this case. NSCA Formal Complaint #26-10 was initiated, not by Mr. Hicks' handwritten complaint, but the complaint of Todd Hitch. *See* Ex. A, Hampton Dec. at ¶¶ 11-12; Ex. A-6.

- Breach Claim 5: Failing to obtain written statements from all known witnesses, including the witnesses Powell expressly identified and the disinterested spectator he named, as Rule IV-D-2(k) requires. *See* Dkt. No. 1 at ¶60(e).

  Response: As noted in the disciplinary letter, the NSCA obtained statements from numerous witnesses, including the following witnesses that Powell identified: Jared Rumer, Jonathan Prince, Cameron Hicks, Brett Seibert, "Booboo" Brady, Enzo Di Giovanni, Brett Turrentine, and Tiffany Goodin. *See* Ex. A, Hampton Decl. at ¶¶ 15-25. The NSCA Executive Director did attempt to get a statement from Tommy Seibert, which is all the NSCA Rules require. *See id.* at ¶ 26.

- Breach Claim 6: Failing to prepare or act upon a recommendation containing all evidence considered, a determination whether the alleged violation occurred, and the recommended discipline, as Rule IV-D-2(l) requires, and failing to issue a ruling stating the evidence considered and a determination of whether the alleged violation occurred, as Rule IV-D-2(n) requires. *See* Dkt. No. 1 at ¶60(f).

  Response: The disciplinary letter details the evidence considered, including identifying witnesses, reference to the past disciplinary actions and conduct by Plaintiff, the NSCA's finding that violations occurred, and imposing discipline. *See* Ex. A-1.

- Breach Claim 7: Deciding the matter on evidence never disclosed to Powell — thirteen witness statements and information from the host club — which he was never permitted to see, answer, or test. *See* Dkt. No. 1 at ¶60(f).

  Response: The NSCA Rules do not require the NSCA to provide witness statements to the member for review prior to Executive Council decision, and instead only states that the Executive Director and Executive Council will review those materials. *See* Ex. A-2, NCA Rules at § IV-D-2.

- Breach Claim 8: Imposing a composite sanction that the Rules' disciplinary scheme does not contemplate and that bears no reasonable relationship to the conduct properly before the Council, while imposing no sanction at all on other participants in the same conduct. *See* Dkt. No. 1 at ¶60(f).

  Response: The NSCA Rules do not prohibit the Executive Council from imposing any discipline for Rule violations. There is no breach for imposing suspension or other discipline for rule violations, and Plaintiff does not dispute that he violated NSCA Rules.

20. Plaintiff has failed to allege sufficient facts in his Application to prove a substantial success on the merits and cannot do so, particularly given that Plaintiff does not dispute that he violated NSCA Rules, the NSCA's discretion in governing its membership, and the Plaintiff's agreement to "abide by the[] rules and to accept all official decision of the NSCA in interpreting and/or applying the[] rules." *See* Ex. A-2, NSCA Rules at §§ IV-B, IV-D; *Urantia Found.*, No. H-80-1428, 1982 U.S. Dist. LEXIS 10260, at *12 (Granting judgment as a matter of law in a claim against a private organization where it was undisputed that the proceedings were pursuant to the organizations rules and bylaws).

21. Plaintiff also cannot prove a likelihood of success on the merits because he has failed to exhaust the appeal process allowed by the NSCA Rules, which Plaintiff is apparently in the process of pursuing, but has not. *See* Dkt. No. 1 at ¶¶ 44-46. Therefore, Plaintiff's Application must be denied.

**B. Plaintiff cannot demonstrate irreparable harm.**

22. To establish irreparable harm, Plaintiff must show that: (1) the harm to Plaintiffs is imminent; (2) the injury would be irreparable; and (3) that Plaintiffs have no other adequate legal remedy. *Criterion Brock, Inc. v. Aguirre*, No. H–11–1877, 2011 WL 2517319, at *3 (S.D. Tex. June 23, 2011). Because Plaintiff cannot meet his burden to establish that the injury would be irreparable, or that he has no other adequate legal remedy, the Court should deny Plaintiff's Application for a temporary restraining order.

23. "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A C. Wright, A. Miller & M.K. Kane, Federal Practice and Procedure, § 2948.1; *cited by Texas v. United States*, No. B-14-254, 2015 U.S. Dist. LEXIS 18551, at *202 (S.D. Tex. Feb. 16, 2015). An injury is irreparable only if it cannot be undone through monetary remedies. *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981); *see also Quintana v. McCombs Ford W.*, No. SA:14-CV-381-DAE, 2014 U.S. Dist. LEXIS 88448, at *6-7 (W.D. Tex. June 30, 2014) ("[T]he law in the Fifth Circuit is clear that a showing of irreparable injury is required to obtain a preliminary injunction and that monetary injuries, which could be remedied if Plaintiff prevails in this case, are insufficient to constitute irreparable injury").

24. Of the harm that Plaintiff claims is irreparable and imminent, it appears that only one may occur imminently: loss of a competitive opportunity in the U.S. Open. *See* Dkt. No. 3 at

¶ 16. Indeed, some of the harm Plaintiff alleges, such as the loss to his reputation and goodwill, and the loss of a sponsorship, is based on his own conduct, not that of the NSCA, has already begun, and is not imminent irreparable harm that should be addressed by this court.

25. However, Plaintiff does not allege any specifics as to how the alleged harm is irreparable. Plaintiff seeks relief for alleged injuries that (if viable, which is denied) could be compensated monetarily. Plaintiff is primarily seeking a temporary restraining order to allow him to compete in a sporting competition that begins on August 11, 2026 at 2 p.m., *see* Dkt. No. 6 at ¶1, and for which (if Plaintiff won) he could obtain monetary prizes. In other words, Plaintiff failed to "demonstrate that irreparable injury is likely in the absence of an injunction" because if he could succeed in his claim, Plaintiff's alleged injury is fully compensable. *Winter*, 555 U.S. at 375. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of an injunction, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Dennis Melancon, Inc.*, 703 F.3d at 279 (internal brackets, quotations, and citations omitted). It is Plaintiff's burden to establish that money damages would not fully repair the alleged harm such that injunctive relief is warranted. *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986) ("The plaintiff need show…that money damages would not fully repair the harm").

26. Here, Plaintiff has not plead sufficient facts to meet his burden that any alleged harm is irreparable and cites to no law for the proposition that lost competition would cause irreparable harm. The Court should deny Plaintiff's Application for that reason alone.

**C. <u>If an injunction is granted, the harm to Defendant will exceed the alleged harm to Plaintiff.</u>**

27. When deciding whether to grant the extraordinary relief of a temporary restraining order, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 376 (quoting *Amoco Production Co v. Village of Gambell*, 480 U.S. 531, 542 (1987)). Plaintiff contends that he will suffer some harm if he is not allowed to compete during the competition this week. However, it is clear that allowing Plaintiff to compete in this event will cause the NSCA significant harm due to anticipated decreased membership participation and safety concerns for participants and spectators. *See e.g.* Ex. A, Hampton Dec. at ¶ 34; Exs. A-21-22. Particularly given that the NSCA is a firearms based organization, the NSCA has real concern that continuing to allow Plaintiff to compete could endanger NSCA members and spectators. Ex. A at ¶ 34. Moreover, granting the Application could throw the governances of the NSCA into chaos, given that it would encourage others to challenge each and every decision made by the NSCA.

28. In contrast, if Plaintiff's request for injunctive relief is denied and he somehow ultimately prevails on his claim, he would theoretically have the ability to recover monetary damages and other relief. Given the consequences of granting the requested relief, the balance of interests clearly weigh in favor of denying Plaintiff's Application.

**D. <u>Granting the requested injunctive relief will not serve the public interest.</u>**

29. Plaintiff is also not entitled to a temporary restraining order or preliminary injunction because Plaintiff has not and cannot demonstrate that the relief requested will serve the public interest. *See Camacho v. Tex. Workforce Comm'n*, 326 F. Supp. 2d 794, 802 (W.D. Tex. 2004) ("Plaintiffs must show the public interest is served by granting an injunction"). Plaintiff only argues that the public interest lies in ensuring that the NSCA exercises its power "within the bounds

of its own rules and of reason, common sense, and fairness." Dkt. No. 3 at ¶ 19. While the requested relief will undoubtedly serve Plaintiff's personal interest, Plaintiff has nowhere shown how the public interest will be served by allowing him to compete in the NSCA U.S. Open despite the very real and credible safety concerns, and damage to the organization raised by the NSCA. See Ex. A at ¶¶ 34; Exs. A-21, A-22.[1]

30. Moreover, if Plaintiff is permitted to obtain such extraordinary relief as he requests, particularly without establishing that it is in the public interest, it would encourage any NSCA member who has been disciplined (and presumably the members of other organizations) to seek similar relief, rendering the extraordinary nature of preliminary injunctive relief meaningless and imposing an undue burden on the Courts, which is clearly not in the public interest. *See e.g. Juarez*, 172 S.W.3d at 280 (Holding that "[t]he policy of non-intervention in the affairs of private associations, as shown above, is a well-established and a wise and necessary policy. Without such policy, organizations such as Appellees simply could not function.")

## IV. PRAYER

WHEREFORE, Defendant prays that the Court deny Plaintiff's Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction and award Defendant all other and further relief to which it may be entitled.

[1] For the same reasons, if the Court is inclined to grant the extraordinary relief requested in Plaintiff's Application, the Court should impose a significant surety to account for any potential damage to the NSCA due to decreased attendance and participation, and potential harm to participants and attendees if Plaintiff once again loses his temper in a firearm setting.

Dated: August 11, 2026

Respectfully submitted,

**DYKEMA GOSSETT PLLC**
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

By: */s/ Ryan D. Landry*
Ryan D. Landry
State Bar No. 24133526
Email: rlandry@dykema.com

***ATTORNEYS FOR DEFENDANT NATIONAL SKEET SHOOTING ASSOCIATION D/B/A NATIONAL SPORTING CLAYS ASSOCIATION***

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed on this 11th day of August, 2026, and a copy of this document was delivered via e-mail to Plaintiffs' counsels of record.

Marshall B. Swanson
State Bar No. 24098490
E-mail: MSwanson@cokinoslaw.com
COKINOS | YOUNG
10999 ih-10 West, Suite 800
San Antonio, Texas 78230
(210) 293-8700 (Office)
(210) 293-8744 (Fax)

Stephen A. Hess
Bar No. 16899
Email: stephen@stephenahess.com
THE LAW OFFICES OF STEPHEN A. HESS, P.C.
111 South Tejon, Suite 102
Colorado Springs, Colorado 80903
(719) 471-4516 (Office)
*(Pending Pro Hac Vice Admission)*

***ATTORNEYS FOR PLAINTIFF***
***BRANDON POWELL***

*/s/ Ryan D. Landry*
Ryan D. Landry